IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 Proceeding |
| ) | |
| MAJESKY AUTOMOTIVE GROUP, INC. ) | Case No.: 08-11580 |
| ) | |
| Debtor. ) | Hon. Carol A. Doyle |
| ) | Hearing Date: June 19, 2008 |
| | Hearing Time: 10:30 a.m. |

### AGREED FINAL ORDER ON MOTION FOR LIMITED USE
### OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

This matter came to be heard on the Motion (the "Motion") of Majesky Automotive Group, Inc., as debtor-in-possession (hereinafter the "Debtor" in its post-petition capacity and "MAG" in its prepetition capacity) in these proceedings for the entry of an order (A) authorizing the Debtor to use certain "Cash Collateral" (as defined in section 363(a) of the United States Bankruptcy Code, 11 U.S.C. §101, et. seq. (the "Code") and hereinafter referred to as "Cash Collateral"), all of which Cash Collateral is presently subject to security interests, liens and rights of set-off of Fifth Third Bank Chicago ("Fifth Third"), and, in connection with that authorization, (B) granting certain substitute and additional liens and other relief for the benefit of Fifth Third. Fifth Third has consented to the use of certain Cash Collateral up to the amount stated herein, provided that such use is conditioned upon the entry of an order in the present form imposing certain conditions and granting certain relief for the benefit of Fifth Third, as hereinafter set forth.

The court also having considered written objections to the Motion filed by Volkswagen of America ("Volkswagen") and Kia Motors America ("Kia").

THE COURT HAS BEEN ADVISED THAT THE DEBTOR AND FIFTH THIRD HAVE STIPULATED TO THE FOLLOWING:

A. On May 7, 2008 (the "Petition Date"), the Debtor filed a Petition (the "Petition") for relief under Chapter 11 of the Code. Pursuant to sections 1107 and 1108 of the Code, the Debtor has retained possession of its property and is authorized thereby, as a debtor-in-possession, to continue the operation and management of its business.

B. Prior to the Petition Date, Fifth Third extended credit under an agreement relating to certain loan facilities from Fifth Third to MAG evidenced by and more fully described in the agreement titled "Line of Credit" executed by MAG effective as of December 8, 2003 (hereinafter referred to as the "Line of Credit") under which Fifth Third made available to MAG a Five Million Dollar ($5,000,000) New Vehicle Line of Credit and a One Million Dollar ($1,000,000) Used Vehicle Line of Credit.

C. The Five Million Dollar ($5,000,000) New Vehicle Line of Credit was further evidenced by a separate promissory note titled "Master Secured Promissory Note" dated December 8, 2003 relating to amounts advanced with regard to new vehicles (hereinafter referred to as the "New Vehicle Promissory Note").

D. The One Million Dollar ($1,000,000) Used Vehicle Line of Credit was further evidenced by a separate promissory note titled "Master Secured Promissory Note" dated December 8, 2003 relating to amounts advanced with regard to new vehicles (hereinafter referred to as the "Used Vehicle Promissory Note").

E. MAG granted a security interest to Fifth Third to secure the obligation under the Line of Credit, the New Vehicle Promissory Note and the Used Vehicle Promissory Note through a Dealer Floor Plan Agreement executed by MAG effective as of December 8, 2003 (hereinafter referred to as the "Floor Plan Agreement").

F. Under the Floor Plan Agreement, MAG granted to Fifth Third a security interest in the following collateral (hereinafter referred to as the "Prepetition Collateral"):

1. all Accounts, all Inventory, all Equipment, all General Intangibles (each as described in ¶ 2 of the Floor Plan Agreement;

2. all instruments, chattel paper, documents, securities, moneys, cash, letters of credit, warrants, dividends, distributions, contracts, agreements, contract rights, franchise rights or other property, owned by [MAG] or in which [MAG] has an interest, including but not limited to, those which are now or hereafter in the possession or control of [Fifth Third] or in transit by mail or carrier to or in the possession of any third party acting on behalf of [Fifth Third], without regard to whether [Fifth Third] received the same in pledge, for safekeeping, as agent for collection or transmission or otherwise or whether [Fifth Third] had conditionally released the same, and the proceeds thereof, all rights to payment from, and all claims against [Fifth Third] and any deposit account of [MAG] with [Fifth Third], including all demand, time, savings, passbook or other accounts and all deposits, therein;

3. all proceeds and products of the [Prepetition] Collateral and all additions and accessions to, replacements of, insurance or condemnation proceeds of, and documents covering [Prepetition] Collateral, all tort or other claims against third parties arising out of damage or destruction of [Prepetition] Collateral, all property received wholly or partly in trade or exchange for [Prepetition] Collateral, all fixtures, all leases of [Prepetition] Collateral and all rents, revenues, issues, profits and proceeds arising from the sale, lease, license, encumbrance, collection, or any other temporary or permanent disposition, of the [Prepetition] Collateral or any interest therein; and

4. all Assets and personal property now owned or hereafter acquired, all now owned and hereafter acquired inventory, equipment, fixtures, goods, accounts, chattel paper, documents, instruments, farm products, general intangibles,

2

supporting obligations, software, commercial tort claims, minerals, standing timber, growing crops and rents, issues, profits, products and proceeds thereof, wherever any of the foregoing is located.

G. In consideration of the extension of credit under the Line of Credit, the New Vehicle Promissory Note and the Used Vehicle Promissory Note and for other financial accommodations, MAG executed an agreement titled "Financial Covenants" relating to certain agreements made by MAG for the benefit of Fifth Third as more fully described in such agreement (hereinafter referred to as the "Financial Covenants").

H. Fifth Third extended certain additional loan facilities to MAG evidenced by and more fully described in the agreement titled "Revolving Note", which MAG executed to be effective as of September 26, 2007 and due on March 26, 2008 relating to the advance of $200,000 made by Fifth Third for use in MAG's business (hereinafter referred to as the "Revolving Note"). The Revolving Note is secured by the Floor Plan Agreement.

I. The Line of Credit, the New Vehicle Promissory Note, the Used Vehicle Promissory Note and the Revolving Note are hereinafter referred to as the "Notes". The Line of Credit, the New Vehicle Promissory Note, the Used Vehicle Promissory Note, the Floor Plan Agreement, the Financial Covenants and the Revolving Note are hereinafter referred to as the "Prepetition Loan Documents".

J. Pursuant to the Prepetition Loan Documents, Fifth Third agreed to make, and has made, various advances to the Debtor, and, as a result thereof, on the Petition Date, the Debtor was indebted to Fifth Third pursuant to the Prepetition Loan Documents as follows, exclusive of unpaid expenses and other amounts now or hereafter owing or accruing pursuant to the Prepetition Loan Documents and the other agreements entered into by the Debtor in connection therewith, (hereinafter the "Prepetition Indebtedness"):

| Instrument | Amount Owing |
|---|---|
| New Vehicle Promissory Note Principal | $3,188,187.00 |
| New Vehicle Promissory Note: Interest | $   30,882.03 |
| Used Vehicle Promissory Note Principal: | $1,053,470.50 |
| Used Vehicle Promissory Note Interest: | $     9,342.54 |
| Total Prepetition Indebtedness: | $4,281,882.07 |

K. Fifth Third holds security interests in and liens upon the Prepetition Collateral, which were properly perfected prior to ninety (90) days preceding the Petition Date, and such security interests and liens are valid, choate, enforceable, non-avoidable and of first priority.

L. Pursuant to the Prepetition Loan Documents, Fifth Third has a valid and perfected security interest in, inter alia, the cash proceeds of, and rents produced by, the Prepetition

3

Collateral. Cash proceeds of, and rents from, the Prepetition Collateral coming into the Debtor's possession, custody or control constitute Cash Collateral.

M. Fifth Third has indicated a willingness to consent to the Debtor's use of a limited amount of Cash Collateral for a limited period of time and only pursuant to the terms of this Order, on the condition that the United States Bankruptcy Court for the Northern District of Illinois (the "Court"), pursuant to sections 361 and 363 of the Code, provides to Fifth Third as adequate protection (1) a security interest in and lien upon all of the property of the Debtor and its estate (the "Estate"), whether now existing or hereafter acquired or arising, except as provided herein and (2) the other relief accorded Fifth Third pursuant to this Order.

N. The Debtor acknowledges the validity and enforceability of the security interests and liens of Fifth Third securing the Prepetition Indebtedness.

O. The Debtor in consideration of Fifth Third's consent to the use of Cash Collateral according to the terms of this Order (1) agrees not to contest the validity or enforceability of Fifth Third's security interests liens in the Prepetition Collateral or the proceeds, rents, products or profits thereof (2) waives any right it may have to seek avoidance of Fifth Third's security interests in and liens on the Prepetition Collateral or the proceeds, rents, products or profits thereof; and (3) waives its rights to assert any claim for equitable subordination, recharacterization or equitable disallowance with respect to the Prepetition Indebtedness provided, however, with respect to each of the foregoing, and notwithstanding anything to the contrary in this Order, the Debtor reserves its rights to object to the allowed amount of the Prepetition Indebtedness.

P. As a result of the Debtor's insufficient available working capital to finance its postpetition operations, the immediate authorization of the use of Cash Collateral is necessary to operate the Debtor's business.

BASED UPON THE MOTION, THE RECORD BEFORE THE COURT, AND THE COMBINED CONSENT OF THE DEBTOR AND FIFTH THIRD TO THE ENTRY OF THIS EMERGENCY ORDER, THE COURT FINDS AS FOLLOWS:

Q. Sufficient and appropriate notice and opportunity for hearing have been given for a hearing on the Motion in accordance with Sections 102, 361, 362, 363 and 364 of the Code and Rules 2002, 4001(c) and (d), 9006 and 9014 of the Bankruptcy Rules. This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §1334. This is a core proceeding within one or more subsections of 28 U.S.C. §157(b). This Order shall become effective immediately upon its entry, pursuant to Rules 7062 and 9014 of the Bankruptcy Rules.

R. A need exists for the Debtor to use Cash Collateral in order to maintain its operations. The Debtor requires Cash Collateral for the payment of, inter alia, liens and encumbrances on cars taken in trade, dealer traded vehicles, the purchase of equipment and supplies, insurance premiums, payroll expenses and general operating expenses ("Expenses"). The Debtor will suffer irreparable harm unless this Court authorizes the continued use of Cash Collateral on the terms and conditions set forth herein.

S. Fifth Third will not consent to the usage of Cash Collateral except on the terms and conditions contained in this Order and is relying on such terms and conditions in agreeing to the Debtor's use of Cash Collateral on the terms hereof. It is necessary and appropriate for the Debtor to grant to Fifth Third security interests and liens in the property of the Estate as set forth in this Order and to provide Fifth Third the other rights and protections set forth herein.

T. The security interests and liens granted in this Order to Fifth Third do not impair the valid and perfected security interests and liens, if any, of any holder of a security interest or lien in the property of the Estate other than Fifth Third.

U. The Debtor has requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(b)(2). Good cause has been shown for the entry of this Order. Among other things, entry of this Order will minimize disruption of the Debtor as a going concern, will increase the possibilities for a successful chapter 11 case and is in the best interests of the Debtor, its creditors and the Estate. The terms of the use of Cash Collateral authorized hereby are fair under the circumstances and reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties.

V. Fifth Third and the Debtor have (1) negotiated the terms and conditions of this Order in good faith and at arms-length and (2) offered sufficient evidence of the good faith of Fifth Third in agreeing to this Order and the Debtor's use of the Cash Collateral of Fifth Third on the terms set forth herein.

NOW THEREFORE, IT IS HEREBY ADJUDGED, ORDERED AND DECREED:

1. For purposes of this Order, the term "Cash Collateral" shall be deemed to include all cash and cash equivalents of the Debtor, including all rents of the Debtor, all deposits subject to setoff and all cash and cash equivalents arising from the collection or other conversion to cash and cash equivalents of property of the Debtor.

### Cash Collateral Usage

2. Subject to the terms and conditions contained in this Order, the Debtor may use Cash Collateral during the period commencing on the date of this Order through and including the earlier of (A) the close of business on the date of the further hearing set forth in paragraph 24 below and (B) the time when the consent of Fifth Third to the Debtor's use of Cash Collateral is terminated pursuant to the terms of this Order (the "Budget Period"). The Debtor shall use or consume Cash Collateral only (1) in accordance with the budget that is either agreed to by the Debtor and Fifth Third or approved by the Court in accordance with paragraph 23 below (the "Budget"), including the time period and category limits set forth therein with a permitted 5% deviation of each line item unless the Debtor first obtains either a Court approved modification of the Budget or the express written consent of Fifth Third, and only for the applicable Budget Period and (2) in compliance with the other terms of this Order.

3. Fifth Third shall have the right to terminate the Debtor's right to use Cash Collateral pursuant to the terms of this Order upon (a) a default in the performance of any obligation of the Debtor under this Order, (b) the modification, stay or amendment of this Order

5

without the consent of Fifth Third, (c) the institution of any claim or action by the Debtor the purpose of which is to seek or the result of which would be to obtain any relief (i) invalidating, setting aside, avoiding or subordinating, in whole or in part, Fifth Third's security interests in or liens upon the Prepetition Collateral, (ii) preventing, hindering or otherwise delaying, whether directly or indirectly, Fifth Third's assertion, enforcement or realization upon any Prepetition Collateral as permitted by this Order or (iii) otherwise seeking relief against Fifth Third without its consent, (d) the conversion or dismissal of the Debtor's bankruptcy case or (e) the institution by the Debtor of an action to seek that the Court grant or impose, under section 364 of the Code or otherwise, security interests in or liens on any of the Collateral equal, superior or subordinate to Fifth Third's security interests in or liens on that property.

4. Notwithstanding the foregoing, upon the occurrence of any of the events described in paragraph 3 above other than those events described in subparagraph (b) thereof, Fifth Third's consent to the use of Cash Collateral shall not terminate until 8:00 a.m. (prevailing Central Time) on the second business day after the day on which Fifth Third shall have given written notice (by facsimile or electronic mail) to the Debtor and its counsel, to counsel of record for Kia, Volkswagen and any official committee of unsecured creditors (the "Committee") hereafter appointed and to the U.S. Trustee of its termination of such consent.

### Adequate Protection Liens and Payments

5. As adequate protection for Fifth Third's interests as of the Petition Date in the Prepetition Collateral, Fifth Third is hereby granted, pursuant to sections 361 and 363 of the Code, a valid, choate, perfected, enforceable and non-avoidable first priority security interest in and lien upon all assets and property of the Debtor and the Estate, of any kind or nature whatsoever, whether now existing or hereafter acquired or arising, and all proceeds, rents, products or profits thereof (collectively, the "Postpetition Collateral" and, together with the Prepetition Collateral, the "Collateral"), including, without limitation, the Prepetition Collateral owned by the Debtor as of the Petition Date and all proceeds, rents, products or profits thereof. Such security interest and lien shall at all times be senior to the rights of the Debtor and any successor Trustee in this or any subsequent proceedings under the Code and shall be superior in priority to Fifth Third's security interests and liens existing prior to the Petition Date. Notwithstanding the foregoing, Fifth Third's security interest and lien shall be subject to valid, perfected, enforceable and non-avoidable liens and security interests in one or more the Debtor's assets held by parties other than Fifth Third as of the Petition Date which are superior in priority to Fifth Third's security interests and liens on such asset or assets.

6. Notwithstanding the foregoing, Fifth Third is not hereby granted a security interest or lien in any cause of action of the Estate arising solely under sections 544, 545, 547, 548, 549 or 553(b) of the Code; <u>provided however</u>, Fifth Third reserves the right to seek such security interest in the future. The security interests, liens, rights and remedies granted to Fifth Third pursuant to this Order shall not be modified, altered or impaired in any manner by any plan of reorganization or order of confirmation for the Debtor, or by any

other financings of, extensions of credit to, or incurring of debt by the Debtor, whether pursuant to sections 363 or 364 of the Code, or otherwise.

7. The security interests and liens granted herein (A) are and shall be in addition to all security interests, liens, and rights of set-off existing in favor of Fifth Third on the Petition Date and (B) are and shall be valid, choate, perfected, enforceable, non-avoidable and effective as of the Petition Date without any further action by the Debtor or Fifth Third and without the execution, filing or recordation of any financing statements, security agreements, vehicle lien applications, or other documents. All security interests and liens granted herein to Fifth Third be and they hereby are deemed perfected, and no further notice, filing or other act shall be required to effect such perfection. If Fifth Third shall, in its sole discretion, choose to file financing statements, other documents or otherwise confirm perfection of such security interests, or liens, Fifth Third is authorized to effect such filings and recordations, and all such financing statements or similar documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Order. A photocopy of this Order may, in the discretion of Fifth Third be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, notices of lien or similar instruments, and all filing offices are hereby directed to accept such copy of this Order for filing and recording. If Fifth Third hereafter requests the Debtor to execute and deliver to Fifth Third financing statements or other instruments or documents considered by Fifth Third to be necessary or desirable to further evidence the perfection of the security interests or liens granted in this Order, the Debtor is hereby authorized and directed to execute and deliver those financing statements, instruments and documents.

8. The security interests and liens granted herein shall secure payment of (A) the allowed Prepetition Indebtedness in an amount equal to any diminution in value of the interest in the Prepetition Collateral which occurs during the pendency of the Debtor's bankruptcy case, whether such diminution is a consequence of (i) the Debtor's use of Collateral (including the Debtor's consumption of Cash Collateral), (ii) depreciation or price fluctuation in the Collateral, (iii) the conversion of such Prepetition Collateral into Postpetition Collateral or (iv) any other action, event or circumstance, (B) all allowed interest payable to Fifth Third, (C) all allowed fees, costs and expenses of Fifth Third and (D) the aggregate amount of Cash Collateral used by the Debtor.

9. Notwithstanding anything to the contrary contained in this Order, the liens and security interests granted to Fifth Third hereunder shall be subject to any defenses that Kia and/or Volkswagen may have regarding any amounts that are or may become due and owing from Kia and/or Volkswagen to the Debtor or MAG including, without limitation, any rights of setoff or recoupment that Kia an/or Volkswagen have or may have.

10. Interest on the Prepetition Indebtedness set forth herein shall accrue at the prime rate plus 450 basis points. Payment of all outstanding interest, charges and reimbursement of expenses of Fifth Third shall be made on the fifteenth (15th) day of each month except for those months in which such date is a Sunday or holiday, in which case the payment shall be made before the close of the next business day on a provisional basis. In addition, Debtor shall pay or remit to Fifth Third an amount (the "Vehicle Payoff Amount") equal

to the open amount on the Floor Plan Agreement for any new or used vehicle sold after the date of this Order. The Debtor shall remit the Vehicle Payoff Amount to Fifth Third by the earlier of (1) the date when such proceeds are received by the Debtor; or (2) the third day following the date of sale of the new or used vehicle which is the subject of such finance contract. **Any creditor or party in interest wishing to contest the payment of monies to Fifth Third Bank pursuant to §506 or otherwise must file the appropriate pleading on or before the 30th day of the calendar month following the filing of an operating report first identifying such payment or payments. In event that no such pleading is filed, the right to contest such payment or payments shall be thereafter waived. For purposes of this Order, a business day will close at 5:00 p.m. (prevailing Central Time).**

11. Nothing in this Order shall in any way restrict the scope of Fifth Third's prepetition security interests, liens, rights of set-off or claims with respect to the Prepetition Indebtedness or the Prepetition Collateral, or the proceeds, rents, products or profits thereof.

12. Nothing contained in this Order or otherwise, and no action or inaction of Fifth Third shall be deemed to be a consent by Fifth Third to any charge, lien, assessment or claim against the Collateral under section 506(c) of the Code or otherwise.

13. The Debtor shall, on a weekly basis or such shorter period as Fifth Third may require, advise Fifth Third of the status of the Debtor's marketing efforts, interested buyers, sale negotiations and such other related information as Fifth Third may request, and Fifth Third shall keep all such information confidential among itself, its employees, officers, directors and consultants and its attorneys.

### Additional Protection

14. As of the petition date the Debtor has sufficient cash on deposit with Fifth Third Bank, which cash constitutes a part of the Prepetition Collateral, necessary to pay Expenses as set forth on the attached budget. The use of Cash Collateral shall be limited to such funds on deposit on or after the Petition Date. The Debtor is not authorized under this Order to use any other Cash Collateral or any Collateral outside the ordinary course of business. As further protection for the interests of Fifth Third in the Prepetition Collateral, the Debtor shall deposit with Fifth Third proceeds of the sale, lease or other disposition of the Collateral (the "Sale Proceeds"), which shall not be otherwise drawn upon by the Debtor except to pay budgeted sums or upon entry of a further order of Court.

15. In addition to the foregoing protections, except where inconsistent with the Code, the Bankruptcy Rules or orders of this Court in this case, the Debtor shall fully comply with the obligations as set forth in the Prepetition Agreements, with respect to (i) access to the Debtor's books and records and the Prepetition Collateral, which provisions shall be deemed to apply to all of the Collateral, (ii) financial and other reporting to be reasonably specified by Fifth Third, (iii) inspections, (iv) maintenance and preservation of Prepetition Collateral, which provisions shall be deemed to apply to all of the Collateral, (v) operations and (vi) the other provisions therein where not inconsistent with the Code,

the Bankruptcy Rules or orders of this Court in this case, except that the Debtor need not comply with representations as to the absence of any proceeding such as the Debtor's bankruptcy case, or provisions requiring the payment of money to Fifth Third or establishing any financial covenants. In addition, the Debtor shall furnish, or cause to be furnished, on a prompt basis, to Fifth Third any reports or other information concerning any sale or proposed sale of the Debtor's assets, including without limitation, such information concerning any sale or proposed sale of the Debtor's assets, as Fifth Third may from time to time reasonably request.

16. On a daily basis, the Debtor shall report to Fifth Third, in writing, by 12:00 p.m. (Prevailing Central Time) each business day, for (a) all vehicles sold by the Debtor for the preceding business day; (b) the identity (by description and VIN) of vehicles taken in trade, the lien status, the identity of any lender with a lien on the vehicle, the unpaid lien balances of trade-ins, the amount of any sales proceeds received by check or electronic funds transfer; and (c) a listing by description, location and VIN of all vehicles in used car inventory (whether or not financed by Fifth Third), the actual cash value of the vehicle, the amount owed with respect to such used vehicle for financing provided by Fifth Third, and the amount of any outstanding lien payoff required for the used vehicle.

## Cash Management

17. The Debtor shall on a daily basis provide to Fifth Third screen prints detailing cash on deposit with any institution other than Fifth Third as of or after the Petition Date (including as to any deposit, the identity of the institution at which any such deposit is maintained and the amount of such deposit) and (2) immediately following the receipt thereof, the Debtor shall notify Fifth Third in writing of any cash, checks, securities, documents of title, negotiable instruments or other cash equivalents received on or after the Petition Date that have not been deposited into an account with Fifth Third. In each case, the Debtor shall immediately deposit such amounts into the Debtor's prepetition deposit account at Fifth Third or such other accounts as may be opened by the Debtor at Fifth Third upon written notice to, and the prior written consent of, Fifth Third.

## Illinois Department of Revenue

18. Nothing in this Order shall be construed to preclude the Illinois Department of Revenue from attempting to establish that funds held by the debtor-in-possession or any creditor are held in trust for the Department and shall not preclude the Department from seeking additional relief with respect to those funds. Likewise, nothing in this Order shall preclude the debtor-in-possession or any creditor from challenging any such assertions or contending that any such funds are not held in trust for the Department. The security interests provided for herein shall not diminish in any way the rights, if any, of the Department as a trust fund claimant to obtain possession of funds subject to its trust claims. Funds which the Court, after notice and hearing, may determine constitute trust funds of the Department shall not constitute the collateral of any secured creditor.

## Miscellaneous

9

19. The Debtor (A) hereby releases and discharges Fifth Third and its agents, attorneys, officers, directors, affiliates and employees from any and all claims and causes of action arising out of the relationship of Fifth Third with the Debtor in connection with the entry of this Order; and (B) hereby waives any and all defenses to Fifth Third's security interests in and liens on the Prepetition Collateral; <u>provided, however</u>, that the Debtor reserves its rights to object to the allowed amount of the Prepetition Indebtedness. The release, discharge and waivers set forth above will be deemed effective as of the date of the entry of this Order; <u>provided, however</u>, that the foregoing release shall not impair the right of parties in interest to assert against Fifth Third claims that may belong to the Debtor's Estate arising out of Prepetition activities so long as such claims are properly and specifically asserted through an adversary complaint filed with this Court by not later than July 29, 2008 for parties in interest and not later than August 25, 2008 for any Committee hereafter appointed.

20. No third party is intended to be or shall be deemed to be a third party beneficiary of the provisions of this Order.

21. The subject of this Order is a "core" proceeding within the meaning of 28 U.S.C. § 157. This Order shall be valid and fully effective, shall be binding upon and inure to the benefit of Fifth Third, the Debtor, the Estate and its respective successors and assigns (including, without limitation, any Trustee or examiner in this or any subsequent proceeding under the Code), immediately upon its entry and during the pendency of the Debtor's bankruptcy proceeding, subject to the right of Fifth Third to terminate its consent to the Debtor's use of Cash Collateral as provided in this Order or the expiration of such consent on the date set forth herein.

22. If any or all of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacation shall not affect (A) the validity of any benefit granted to Fifth Third pursuant to this Order with respect to any Cash Collateral released by Fifth Third to the Debtor prior to the later of (i) the effective date of such stay, modification or vacation and (ii) receipt of written notice thereof by counsel to Fifth Third at the address listed at the end of this Order (the "Effective Time") or (B) the validity and enforceability of any security interest, lien or priority authorized hereby. Notwithstanding any such stay, modification or vacation, any release of Cash Collateral made pursuant to this Order by Fifth Third prior to the Effective Time shall be governed in all respects by the original provisions of this Order.

### **Budget Approval Procedures**

23. During each calendar month during the Budget Period, the following procedures shall apply for the adoption or approval of the Budget:

    (a) At or before the close of business on the 21st of each month beginning June 21, 2008 and continuing during the Budget Period, the Debtor shall provide Fifth Third with its proposed Budget ("Proposed Budget") for the following calendar month. Fifth Third shall notify the Debtor At or before the close of business on the 25th of such month whether the Proposed Budget is acceptable to Fifth Third;

(b)  If the Proposed Budget is acceptable to Fifth Third, the Debtor shall file a copy of the Proposed Budget with a notice of filing on the Court's ECF System on or before the 26th day of such month. The Debtor shall also serve a copy of the Proposed Budget upon the office of the United States Trustee, parties who have requested to be served with notices in this case, each known secured creditor, counsel for the Illinois Department of Revenue, the Internal Revenue Service and each of the 20 largest unsecured creditors, provided such creditor has made a request upon the Debtor to receive notice of the Proposed Budget;

(c)  If the Debtor and Fifth Third cannot agree upon a Proposed Budget, the portion of the Proposed Budget on which they can agree shall be filed and served in accordance with the provisions of subparagraph (b) above and the Debtor shall file a motion seeking authority for use of cash collateral as to expenditures upon which the parties cannot agree, provided that the Debtor shall not use cash collateral for any line item not agreed upon by the parties until such time as the Court enters an order authorizing the Debtor to expend such sums. Fifth Third agrees that a hearing upon any such motion filed by the Debtor may be presented upon two (2) business days advanced notice with service by electronic mail to Fifth Third's counsel at the time of filing;

(d)  Any creditor or party in interest may file a motion to limit, modify or prohibit the Debtor's use of cash collateral in accordance with the Proposed Budget which is filed in accordance with the provisions of subparagraph (b) above by filing a motion for such relief no later than five (5) days after the Debtor provides notice of the Proposed Budget, which motion shall be set for hearing on by the moving party on 2 business days notice. Notwithstanding the filing of such motion, the Debtor shall be authorized to expend cash collateral for any contested line item until such time as the Court enters an order denying the Debtor's right to expend such sums;

(e)  If no creditor or party in interest files a timely motion to limit, modify or prohibit the Debtor's use of cash collateral as set forth in the Proposed Budget, the Proposed Budget shall become the approved Budget for the calendar month to which it applies; and

(f)  The Debtor shall provide notice of the entry of this Order in accordance with the requirements of paragraph 24 below. The Debtor shall include in the notice to each of the 20 largest unsecured creditors a statement directing those creditors to the provisions of this paragraph 23 and notifying them that in order to receive copies of each Proposed Budget, such creditor must deliver a written request to the attorney for the Debtor.

**Notice Provisions**

11

24. This Court shall conduct a hearing on the continued use of cash collateral on the ___19th___ day of August 2008 at 10:30 a.m., without prejudice to the right of any party in interest to seek an earlier hearing in accordance with the provisions of paragraph 23 of this Order. By the second business day after the entry of this Order on the docket, the Debtor shall serve a copy of this Order and a notice of entry upon each known secured creditor holding a security interest in any of the Debtor's assets, the Office of the United States Trustee, the Internal Revenue Service, counsel for the Illinois Department of Revenue, counsel for Volkswagen of America and counsel for Kia Motors America, any other persons which the Debtor knows are entitled to notice under Bankruptcy Rule 4001(b) as of such date, and any other party-in-interest for which counsel to the Debtor has received a written request in this case before noon (Chicago Time) on such date to receive such pleadings.

Dated: June 19, 2008

_Carl A. Doyle /aw_
_____
Hon. Carol A. Doyle
Chief Bankruptcy Judge

**CONSENTED TO:**

| **MAJESKY AUTOMOTIVE GROUP, INC.** | **FIFTH THIRD BANK CHICAGO** |
|---|---|
| By: _____ | By: _____ |
| One of Its Attorneys | One of Its Attorneys |

| | |
|---|---|
| Abraham Brustein (ARDC# 0327662) | Gregory J. Jordan (ARDC #6205510) |
| DiMonte & Lizak | Peter J. Schmidt (ARDC #6256638) |
| 216 W. Higgens | Jean Soh (ARDC #6285187) |
| Park Ridge, IL 60068 | Polsinelli Shalton Flanigan Suelthaus PC |
| Telephone: (847) 698-9600 | 180 N. Stetson, Ste 4525 |
| Facsimile: (847) 698-9623 | Chicago, IL 60601 |
| | Telephone: 312-819-1900 |
| | Facsimile: 312-819-1910 |

050358 / 126161
GJJOR 35085