### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | **Chapter 11 Proceeding** |
| | ) | |
| **MAJESKY AUTOMOTIVE GROUP, INC.** | ) | **Case No.: 08-11580** |
| | ) | |
| Debtor. | ) | **Hon. Carol A. Doyle** |
| | ) | |

### FINAL ORDER AUTHORIZING SECURED POSTPETITION
### FINANCING ON A SUPERPRIORITY BASIS PURSUANT TO 11 U.S.C. § 364

This matter coming to be heard upon the motion (the "Motion") dated May 28, 2008 filed by Majesky Automotive Group, Inc., as debtor-in-possession (hereinafter the "Debtor") pursuant to Section 364(c) of title 11 of the United States Code (11 U.S.C. §§ 101, et seq. hereinafter the "Bankruptcy Code") and Rules 2002, 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and pursuant to the terms of the "Stipulation and Interim Order (I) Authorizing Secured Postpetition Financing on a Superpriority Basis Pursuant to 11 U.S.C. § 364 and (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(c)" entered on the docket on May 30, 2008, (the "Interim Order") seeking this Court's authorization for the Debtor, inter alia, (i) to assume Majesky Automotive Group, Inc.'s existing loan agreements as modified in certain respects in order for the Debtor to obtain postpetition financing (the "Postpetition Financing") up to an aggregate principal amount not to exceed $263,251.80 plus accrued interest on the aggregate principal amount advanced upon the terms and conditions set forth in this Order (the "Commitment") from Fifth Third Bank Chicago (the "Fifth Third"); (ii) to grant Fifth Third, pursuant to Bankruptcy Code §§ 364(c) and 364(d), liens on the Debtor's property to secure the Debtor's obligations under the Postpetition Financing; and (iii) to grant Fifth Third priority in payment with respect to such obligations over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b) and 507(b), other than as

described below; and upon the entire record made at the preliminary hearing held on May 29,
2008 and at the final hearing held on June 19, 2008, and this Court having found good and
sufficient cause appearing therefor;

The Debtor and Fifth Third STIPULATE for all purposes in this Case (as defined below):

A.    Fifth Third, as lender, and Majesky Automotive Group, Inc., as borrower ("MAG"), are
parties to (i) an agreement titled "Line of Credit" executed by MAG effective as of
December 8, 2003 (hereinafter referred to as the "Line of Credit") under which Fifth
Third made available to MAG a Five Million Dollar ($5,000,000) New Vehicle Line of
Credit and a One Million Dollar ($1,000,000) Used Vehicle Line of Credit; (ii) a Five
Million Dollar ($5,000,000) New Vehicle Line of Credit was further evidenced by a
separate promissory note titled "Master Secured Promissory Note" dated December 8,
2003 relating to amounts advanced with regard to new vehicles (hereinafter referred to as
the "New Vehicle Promissory Note"); (iii) a One Million Dollar ($1,000,000) Used
Vehicle Line of Credit was further evidenced by a separate promissory note titled
"Master Secured Promissory Note" dated December 8, 2003 relating to amounts
advanced with regard to new vehicles (hereinafter referred to as the "Used Vehicle
Promissory Note"); (iv) a Dealer Floor Plan Agreement executed by MAG effective as of
December 8, 2003 (hereinafter referred to as the "Floor Plan Agreement") under which
MAG granted a security interest to Fifth Third to secure the obligation under the Line of
Credit, the New Vehicle Promissory Note and the Used Vehicle Promissory Note; and (v)
an agreement titled "Financial Covenants" relating to certain agreements made by MAG
for the benefit of Fifth Third as more fully described in such agreement (hereinafter
referred to as the "Financial Covenants").    The Line of Credit, the New Vehicle

2

Promissory Note, the Used Vehicle Promissory Note and the Revolving Note are hereinafter referred to as the "Notes". The Line of Credit, the New Vehicle Promissory Note, the Used Vehicle Promissory Note, the Floor Plan Agreement, the Financial Covenants and the Revolving Note are hereinafter referred to as the "Prepetition Loan Documents". True and correct copies of the Prepetition Loan Documents are included in the Appendix that the Debtor filed with the Motion and are incorporated herein by reference. Unless otherwise specified, all capitalized terms used but not defined herein shall have the meanings given in the Prepetition Loan Agreements.

B.      Without prejudice to the rights of any other party (but subject to the limitations described in ordering paragraph 24 below), the Debtor admits that, in accordance with the terms of the Prepetition Loan Documents, the Borrower is truly and justly indebted to Fifth Third under the Prepetition Loan Agreements, without defense, counterclaim or offset of any kind, and that as of the Filing Date, as defined in the Motion, (i) the Borrower was liable to Fifth Third in the aggregate principal amount of approximately $4,281,882.07 in respect of loans made by Fifth Third to the Borrower pursuant to the Prepetition Loan Agreements (plus attorneys' fees, costs and interest accrued and unpaid thereon) (the "Prepetition Indebtedness") and (ii) as of the Filing Date, the Debtor, in consideration of the Postpetition Financing to be made under the Commitment, waives and releases any and all causes of action and claims against Fifth Third and its agents, representatives, assigns and successors. The provisions of this paragraph B constitute a stipulation by the Debtor and not a finding by the Court, subject to the provisions of ordering paragraph 24 of this Order.

C.    Without prejudice to the rights of any other party (but subject to the limitations described in ordering paragraph 24 below), the Debtor further admit that by reason of the Prepetition Loan Documents, the Prepetition Indebtedness is secured by enforceable security interests in and liens upon the Prepetition Collateral, which were properly perfected prior to ninety (90) days preceding the Petition Date, and such security interests and liens are valid, choate, enforceable, non-avoidable and of first priority in the "Prepetition Collateral", which is defined as follows:

I.    all Accounts, all Inventory, all Equipment, all General Intangibles (each as described in ¶ 2 of the Floor Plan Agreement;

II.   all instruments, chattel paper, documents, securities, moneys, cash, letters of credit, warrants, dividends, distributions, contracts, agreements, contract rights, franchise rights or other property, owned by [MAG] or in which [MAG] has an interest, including but not limited to, those which are now or hereafter in the possession or control of [Fifth Third] or in transit by mail or carrier to or in the possession of any third party acting on behalf of [Fifth Third], without regard to whether [Fifth Third] received the same in pledge, for safekeeping, as agent for collection or transmission or otherwise or whether [Fifth Third] had conditionally released the same, and the proceeds thereof, all rights to payment from, and all claims against [Fifth Third] and any deposit account of [MAG] with [Fifth Third], including all demand, time, savings, passbook or other accounts and all deposits, therein;

III.  all proceeds and products of the [Prepetition] Collateral and all additions and accessions to, replacements of, insurance or condemnation proceeds of, and documents covering [Prepetition] Collateral, all tort or other claims against third parties arising out of damage or destruction of [Prepetition] Collateral, all property received wholly or partly in trade or exchange for [Prepetition] Collateral, all fixtures, all leases of [Prepetition] Collateral and all rents, revenues, issues, profits and proceeds arising from the sale, lease, license, encumbrance, collection, or any other temporary or permanent disposition, of the [Prepetition] Collateral or any interest therein; and

IV.   all Assets and personal property now owned or hereafter acquired, all now owned and hereafter acquired inventory, equipment, fixtures, goods, accounts, chattel paper, documents, instruments, farm products, general intangibles, supporting obligations, software, commercial tort claims, minerals, standing timber, growing crops and rents, issues, profits, products and proceeds thereof, wherever any of the foregoing is located.

4

The provisions of this paragraph C constitute a stipulation by the Debtor and not a finding of the Court, subject to the provisions of ordering paragraph 24 of this Order.

D.    The Debtor does not have sufficient available sources of working capital and financing to carry on the operation of its Business without the Postpetition Financing. The ability of the Debtor to maintain business relationships with its customers, vendors and contractors, to carry out the Business and otherwise finance its operations, is essential to the Debtor's continued viability. In addition, the Debtor's need for financing is immediate and critical. In the absence of the Postpetition Financing, the continued operation of the Debtor's business would not be possible and serious and irreparable harm to the Debtor and its estate would occur. The preservation, maintenance and enhancement of the value of the Debtor's assets are of the utmost significance and importance to a successful reorganization of the Debtor under chapter 11 of the Bankruptcy Code.

E.    Given the Debtor's current financial condition and capital structure, the Debtor is unable to obtain unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense. Financing on a postpetition basis is not otherwise available without the Debtor granting, pursuant to Bankruptcy Code § 364(c)(1), claims having priority over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b) and 507(b), and securing such indebtedness and obligations with the liens and security interests described below pursuant to Bankruptcy Code §§ 364(c) and 364(d).

F.    Fifth Third is willing to extend credit under the terms of this Order and this make secured and priority postpetition loans and other secured and priority postpetition extensions of

5

credit to the Debtor, but only on the terms and subject to the conditions set forth in this

Order.

BASED UPON THE MOTION AND THE RECORD BEFORE THE COURT, THE COURT
FINDS AS FOLLOWS:

I.     On May 7, 2008 (the "Petition Date"), the Debtor filed with this Court its
       Voluntary Petition For Relief under Chapter 11 of the Bankruptcy Code (the
       "Case"). The Debtor remains in possession of its property, and they continue to
       operate and manage its business, as Debtor in possession pursuant to Bankruptcy
       Code §§ 1107 and 1108.

II.    No committee of creditors holding unsecured claims has been appointed in this
       Case, pursuant to section 1102 of the Bankruptcy Code or otherwise.

III.   The Debtor, as debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108,
       operates the business of an automobile dealership under the names Matteson
       Imports, Matteson Kia, Matteson Volkswagen and Matteson Isuzu. The Debtor
       operates that business from premises located at 5355 Miller Circle Drive,
       Matteson, Illinois (the "Business").

IV.    This Court has jurisdiction over the Case and the Motion pursuant to 28 U.S.C. §§
       157(b) and 1334. The Motion constitutes a core proceeding as defined in 28
       U.S.C. § 157(b)(2).

V.     Notice of the Preliminary Hearing and the relief requested in the Motion has been
       given to (i) the Office of the United States Trustee, (ii) the creditors holding the
       20 largest unsecured claims against the Debtor; and (iii) known holders of
       prepetition liens against the Debtor's property. The Preliminary Hearing has been
       held pursuant to the provisions of Bankruptcy Rule 4001(c)(2).

6

35753.1

VI.  Based on the record presented to this Court by the Debtor, it appears (and the Debtor and Fifth Third have stipulated) that the Postpetition Financing has been negotiated in good faith and at arms length between the Debtor and Fifth Third, and any credit extended and loans made to the Debtor pursuant to this Order shall be deemed to have been extended, issued or made, as the case may be, in good faith within the meaning of Bankruptcy Code § 364(e).

VII.  Based on the record before this Court, it appears (and the Debtor and Fifth Third have stipulated) that the terms of this Order, including, without limitation, the terms of the Postpetition Financing, are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

VIII.  The permission granted herein to enter into the Postpetition Financing and obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtor. This Court concludes that entry of this Order is in the best interests of the Debtor's estate and creditors as its implementation will, among other things, allow for the continuation of the Debtor's development and construction activities and a continuation of services to the Debtor, which are necessary to sustain the operation of the Debtor's existing business and enhance the Debtor's prospects for a successful reorganization or a sale of its assets.

Based upon the foregoing findings, stipulations, and conclusions, and upon the record made before this Court at the Preliminary Hearing, and good and sufficient cause appearing therefor;

IT IS HEREBY ORDERED that:

7

35753.1

1.   <u>Motion Granted</u>.  The Motion is granted, subject to the terms and conditions set forth in this Order.

2.   <u>Post-Petition Obligations</u>.   All postpetition loans and all other indebtedness and obligations incurred on or after the Petition Date by Debtor to Fifth Third pursuant to the Loan Documents or this Order, which obligations shall include, but not limited to principal, interest, accrued and unpaid interest, and all costs and expenses, including reasonable attorneys' and consultants' fees and expenses incurred by Fifth Third, shall be included in and referred to as "Debtor's DIP Liabilities".

3.   <u>Authorization</u>.  The Debtor is expressly authorized and empowered to (a) borrow money from Fifth Third on a secured and superpriority administrative basis in an amount not to exceed $263,251.80, as set forth on the Budget attached hereto as Exhibit "A", (b) perform its obligations pursuant to the provisions of this Order, and (c) ratify each of the Loan Documents, as modified by this Order and incorporated herein by this reference, which shall be and become obligations of the Debtor upon the entry of this Order (collectively the "<u>DIP Loan Documents</u>") to consummate the terms and provisions of the Motion and this Order and to evidence perfection of the liens and security interests given to Fifth Third under the terms of the Interim Order and to be given to Fifth Third pursuant hereto and thereto, including, without limitation, such amendments or modifications of the Prepetition Loan Documents as may be necessary to evidence the postpetition borrowings authorized herein; <u>provided</u> that (y) such DIP Loan Documents are consistent with this Order, and (z) nothing in this Order shall be deemed to authorize the assumption of the Prepetition Loan Agreements or any "roll-up" or "roll-over" of the Prepetition Indebtedness.   All postpetition loans and all other indebtedness and

8

obligations incurred on or after the Filing Date by the Debtor to Fifth Third pursuant to this Order and the DIP Loan Documents (including the Debtor's DIP Liabilities) are referred to herein as the "DIP Indebtedness," and, together with the Prepetition Indebtedness, as the "Indebtedness."

4.   Borrowing.   Subject to the terms and conditions of this Order and the DIP Loan Documents, Fifth Third will make postpetition loans to the Debtor, in each case in an aggregate amount not to exceed the Commitment.   Notwithstanding the foregoing, if Fifth Third in its sole discretion advances funds or other extensions of credit in excess of these limitations (or any other limitations in the DIP Loan Documents), such advances (and any other indebtedness in excess of such amount) shall constitute DIP Indebtedness entitled to the benefits of the DIP Loan Documents and this Order.

5.   Existing Events of Default.   Nothing herein or in any of the DIP Loan Documents shall constitute or be deemed to constitute a waiver by Fifth Third of any existing or future Events of Default (including, without limitation, the Events of Default arising from the commencement of this Case).   Without prejudice to, or waiver of, Fifth Third's rights and remedies against the Debtor in respect of any Events of Default other than the Existing Defaults (as defined below), Fifth Third agrees to forbear from foreclosing its liens on any DIP Collateral (as defined below) or otherwise taking enforcement action against the Debtor based solely on any Event of Default which occurred prior to the entry of this Order and of which Fifth Third had actual knowledge as of such date (collectively, the "Existing Defaults"); provided that such forbearance shall terminate upon the earlier of (i) the occurrence of any Event of Default other than an Existing Default or (ii) the Loan Payment Date (as defined below).

35753.1

6.  <u>Interest, Fees, Costs and Expenses</u>. All Debtor's DIP Liabilities Indebtedness shall bear interest at the Prime Rate plus 450 basis points (4.5%) per annum. Interest shall be payable monthly in arrears on the 15th day of each month. All fees payable under the Prepetition Loan Agreements shall be applicable to the Postpetition Financing. The Debtor will, subject to the provisions set forth below, on the fifteenth day following its receipt of an invoice from Fifth Third pay Fifth Third's reasonable out-of-pocket expenses, including reasonable attorneys' fees, costs and expenses incurred in connection with this financing. Fifth Third shall provide counsel for the Debtor and the United States Trustee with a detailed invoice of all fees, costs and expenses for which reimbursement is sought. Each party served shall have ten (10) business days within which to file an objection with the Court and bring the matter on for a hearing on notice to the Debtor, any Committee, the United States Trustee, Fifth Third and all other parties requesting notice of all matters. To the extent the Court enters a final order finding that Lender is undersecured, all interest and fee payments with respect to Prepetition Indebtedness shall be applied to the principal amount of such Prepetition Indebtedness to the extent Lender is undersecured.

7.  <u>Termination of Postpetition Credit</u>. Fifth Third's willingness to make loans hereunder shall immediately and automatically terminate (except as Fifth Third may otherwise agree in writing in its sole discretion), all Indebtedness shall be immediately due and payable in cash (except as Fifth Third may otherwise agree in writing in its sole discretion), and Fifth Third shall have the enforcement rights set forth in paragraph 11 hereof (except as Fifth Third may otherwise agree in writing in its sole discretion) upon the earliest to occur of the following (the "Loan Payment Date"):

35753.1

(a)    August 28, 2008, which is the three (3) month anniversary of the Filing Date, subject to a three (3) month extension thereafter if (a) no Events of Default (other than the Existing Defaults) are in existence, and (b) the Debtor consent to, and this Court approves, such interest rate changes and additional fees as Fifth Third deems appropriate for such extension;

(b)    the date of final indefeasible payment and satisfaction in full in cash of the Indebtedness;

(c)    the effective date of any confirmed plan of reorganization in the Case;

(d)    the consummation of the sale or other disposition of all or substantially all of the assets of the Debtor;

(e)    the occurrence of any violation by the Debtor of this Order (including, but not limited to, a violation of the covenants set forth in ordering paragraph 14 of this Order), or any Event of Default (as defined in the Prepetition Loan Agreements) other than the Existing Defaults;

(f)    the dismissal of the Case or the conversion of the Case into a case under Chapter 7 of the Bankruptcy Code;

(g)    a trustee or an examiner with enlarged powers (beyond those set forth in §§ 1106(a)(3) and (4) of the Bankruptcy Code) relating to the operation of the business of the Debtor is appointed in the Case without the prior written consent of Fifth Third (which consent may be withheld in its sole discretion), or the Debtor apply for, consent to, or acquiesce in, any such appointment without the prior written consent of Fifth Third (which consent may be withheld in its sole discretion);

35753.1

(h)    this Order is stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of Fifth Third (which consent may be withheld in its sole discretion);

(i)    this or any other Court enters an order or judgment in the Case modifying, limiting, subordinating or avoiding the priority of any Indebtedness or the perfection, priority or validity of Fifth Third's prepetition or postpetition liens on any DIP Collateral;

(j)    the Debtor file any application for approval or allowance of, or any order is entered approving or allowing, any administrative expense claim in the Case, having any priority over, or being pari passu with, the super administrative priority of the Indebtedness;

(k)    an order is entered in the Case granting relief from the automatic stay of Section 362 of the Bankruptcy Code to any holder or holders of a lien on any material collateral in allowing such holder or holders to foreclose or otherwise realize upon such liens; or

(l)    any motion or application is filed by or on behalf of the Debtor in the Case seeking the entry of an order, or an order is entered in the Case, approving any subsequent debtor in possession facility for borrowed money or other extensions of credit unless such subsequent facility and such order expressly provide for the indefeasible payment and complete satisfaction in full in cash to Fifth Third of all Indebtedness prior to, or concurrently with, any initial borrowings or other extensions of credit under such subsequent facility.

8.    <u>Security for Indebtedness</u>. Fifth Third is hereby granted as security for the repayment of
all amounts of the DIP Indebtedness, pursuant to §§ 364(c)(2) and 364(c)(3) of the
Bankruptcy Code, a valid and perfected first lien, subject only to Prior Claims (as defined
below), on the Prepetition Collateral and all other property of the Debtor, except for any
claims or causes of action arising under chapter 5 of the Bankruptcy Code (collectively
with all proceeds and products of any or all of the foregoing, the "DIP Collateral").  As
used herein, the term "Prior Claims" shall mean (i) the prepetition liens and security
interests of Fifth Third and (ii) any non-avoidable valid, enforceable and perfected liens
and security interests in favor of any person or entity on or in the assets of the Debtor
which existed on the Filing Date and are not subject to § 552(a) of the Bankruptcy Code,
but only to the extent such liens and security interests are superior in priority to the liens
and security interests of Fifth Third, after giving effect to any existing subordination or
intercreditor arrangements.  Other than the first priority liens and security interests in
favor of Fifth Third pursuant to the DIP Loan Documents and this Order and the Prior
Claims, no other claims, liens or security interests whether prior to or pari passu with the
claims, liens or security interests of Fifth Third shall attach to the DIP Collateral in this or
any subsequent or superseding case (including, without limitation, any conversion of the
Case to a case under Chapter 7 of the Bankruptcy Code or any other proceeding related
hereto or thereto, the "Successor Case") without the express written consent of Fifth
Third (which consent may be withheld in its sole discretion)).  In addition, except to the
extent otherwise expressly set forth in paragraph 23 of this Order, or in a written
instrument, agreement or other document executed by one or more duly authorized
representatives of Fifth Third, no liens or security interests granted to Fifth Third, and no

13

claim of Fifth Third, shall be subject to subordination to any other liens, security interests or claims under § 510 of the Bankruptcy Code or otherwise.

9.    Perfection of New Liens.  All liens and security interests on or in the DIP Collateral granted to Fifth Third by this Order and the DIP Loan Documents shall be, and they hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect such perfection; provided, however, that notwithstanding the provisions of § 362 of the Bankruptcy Code, Fifth Third may, at its sole option, file or record or cause the Debtor to obtain any third party consents or execute, file or record, at the Debtor's expense, any such notices of liens and security interests, and other similar documents as Fifth Third may require.  If Fifth Third, in its sole discretion, shall elect for any reason to cause to be obtained any third party consents or cause to be filed or recorded any such notices, financing statements, or other documents with respect to such security interests and liens, or if Fifth Third, in accordance with the DIP Loan Documents, shall elect to take possession of any DIP Collateral, all such third party consents, financing statements or similar documents or taking possession shall be deemed to have been filed or recorded or taken in this Case as of the commencement of this Case but with the priorities as set forth herein.  Fifth Third may (in its discretion) but shall not be required to, file a certified copy of this Order in any filing or recording office in any county or other jurisdiction in which the Debtor has real or personal property and such filing or recording shall be accepted and shall constitute further evidence of perfection of Fifth Third's interests in the DIP Collateral.

14

10.    Waiver.  The Debtor and its estate (and any party in interest acting on behalf of the
Debtor) hereby irrevocably waive, and are barred from asserting or exercising any right,
(a) without Fifth Third's prior written consent (which may be withheld in its sole
discretion), or (b) without prior indefeasible payment and satisfaction in full in cash of
the Indebtedness: (i) to grant or impose, or request that the Court grant or impose, under §
364 of the Bankruptcy Code or otherwise, liens on or security interests in any DIP
Collateral, which are pari passu with or superior to Fifth Third's liens on and security
interests in such DIP Collateral; or (ii) to modify or affect any of the rights of Fifth Third
under this Order or any DIP Loan Documents by any order entered in the Case or any
Successor Case.

11.    Modification of Automatic Stay; Other Remedies.

(a)    Except as set forth in subparagraph (b) of this paragraph, which governs any
action by Fifth Third to realize upon or foreclose on its liens on any DIP
Collateral or to exercise any other default-related remedies (other than those
specifically referenced in the next sentence), the automatic stay pursuant to § 362
of the Bankruptcy Code is hereby vacated as to Fifth Third to permit it to perform
in accordance with, and exercise, enjoy and enforce its rights, benefits, privileges
and remedies pursuant to this Order and the other DIP Loan Documents without
further application or motion to, or order from, the Court, and regardless of any
change in circumstances (whether or not foreseeable), neither § 105 of the
Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable
law shall be utilized to prohibit Fifth Third's exercise, enjoyment and
enforcement of any of such rights, benefits, privileges and remedies.  Fifth Third

is hereby granted leave, among other things, to (a) receive and apply payments of the Indebtedness and collections on and proceeds of the Prepetition Collateral and the DIP Collateral to the Indebtedness in the manner specified in this Order and the DIP Loan Documents, (b) file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral, (c) to the extent permitted by § 506(b) of the Bankruptcy Code, charge and collect any interest, fees, costs, and expenses and other amounts accruing at any time under the DIP Loan Documents or this Order as provided therein, (d) to give the Debtor any notice provided for in any of the DIP Loan Documents or this Order, and (e) upon the occurrence of an Event of Default other than any Existing Default, or upon the Loan Payment Date, and without application or motion to, or order from the Court or any other court, (i) terminate the Prepetition Loan Agreements and the Postpetition Financing under this Order and the other DIP Loan Documents, (ii) declare all Indebtedness immediately due and payable, and require that all contingent Indebtedness (if any) be cash collateralized or terminated without liability to Fifth Third, (iii) revoke the Debtor's right, if any, under this Order and/or the other DIP Loan Documents to use cash collateral and (iv) cease making loans or other extensions of credit and/or suspend or terminate any obligation of Fifth Third to make loans or other extensions of credit under the DIP Loan Documents or this Order.

(b)     Upon the occurrence of any Event of Default other than any Existing Defaults, or upon the Loan Payment Date, Fifth Third shall be entitled (i) to file an emergency motion for relief from the automatic stay for the purpose of realizing upon,

16

foreclosing or otherwise enforcing its liens on any or all of the DIP Collateral

and/or to exercise any other default-related remedies under the DIP Loan

Documents, this Order or applicable law, and (ii) to obtain an expedited hearing

on such motion upon three (3) days' notice to counsel for the Debtor and counsel

for the United States Trustee. Fifth Third shall be entitled to such relief from the

automatic stay upon a showing only that one or more Events of Default (other

than any Existing Default) have occurred and are then continuing or that the Loan

Payment Date has occurred. Upon the entry of an order granting Fifth Third relief

from the automatic stay to enforce its liens or to exercise any other default-related

remedies, (i) Fifth Third may exercise any remedies available to Fifth Third under

this Order, the Prepetition Loan Agreements and other Prepetition Loan

Documents or applicable law, including to replevy without bond or attach without

bond the Prepetition Collateral and the DIP Collateral, (ii) provided that Fifth

Third in its sole discretion has made available to the Debtor (through additional

Postpetition Loans or by consenting to Debtor's use of cash collateral) sufficient

funds to pay the costs thereof, the Debtor shall cooperate with Fifth Third in

connection with any enforcement action by Fifth Third by, among other things,

(A) providing access to its premises to representatives of Fifth Third, (B)

providing Fifth Third access to its books and records, (C) performing all other

obligations set forth in the Prepetition Loan Agreements, the Prepetition Loan

Documents, this Order and/or the other DIP Loan Documents, and (D) taking

reasonable steps to safeguard and protect the Prepetition Collateral and the DIP

Collateral until Fifth Third can make adequate provision to protect and safeguard

17

the Prepetition Collateral and the DIP Collateral, and the Debtor shall not otherwise interfere or encourage others to interfere with Fifth Third's enforcement of its rights. In addition, upon the occurrence of any Event of Default other than any Existing Default, or upon the Loan Payment Date, and provided that Fifth Third in its sole discretion has made available to the Debtor (through additional postpetition loans or by consenting to the Debtor's use of cash collateral) sufficient funds to pay the costs thereof, the Debtor shall, at the request of Fifth Third, use commercially reasonable efforts to sell or otherwise dispose of the DIP Collateral on terms and conditions acceptable to Fifth Third and shall turn over the proceeds of such sale(s) or other disposition(s) to Fifth Third for application to the Indebtedness in accordance with the provisions hereof and the DIP Loan Documents.

12.    Priority Claims. The DIP Indebtedness shall have the highest administrative priority under §364(c)(1) of the Bankruptcy Code, and shall have priority over all other costs and expenses of administration of any kind, including those specified in, or ordered pursuant to, §§ 105, 326, 330, 331, 503(b), 507(a), 507(b) or 726 or any other provision of the Bankruptcy Code or otherwise (whether incurred in the Case or any Successor Case), and shall at all times be senior to the rights of the Debtor, any successor trustee or estate representative in the Case or any Successor Case. Nothing in this Order shall constitute the consent by Fifth Third to the imposition of any costs or expense of administration or other charge, lien, assessment or claim (including, without limitation, the Commitment) against Fifth Third, its claims or its collateral under § 506(c) of the Bankruptcy Code or otherwise.

13.     Use of Loan Proceeds.  Except as otherwise provided in ordering paragraphs 15 and 16 hereof, the proceeds of any loans or other extensions of credit made by Fifth Third to the Debtor pursuant to this Order and the DIP Loan Documents shall be used only as set forth on the Budget attached hereto as Exhibit "A"

14.     Covenants.  The Debtor shall timely comply with all of the covenants set forth in the Prepetition Loan Agreements, the Prepetition Loan Documents, this Order and the other DIP Loan Documents.

15.     Application of Collateral Proceeds.  All proceeds of DIP Collateral shall be applied to the DIP Indebtedness (in such order as determined by Fifth Third in its sole discretion).  The Debtor shall not have the right to direct the manner of application of any payments to Fifth Third or any other receipts by Fifth Third of proceeds of any of the Prepetition Collateral or DIP Collateral other than in the manner set forth in this ordering paragraph and the Prepetition Loan Agreements.

16.     Non-Ordinary Course Dispositions.  No sale, lease or other disposition of Prepetition Collateral or DIP Collateral outside the ordinary course of business (including any auction or other similar sales) may be done without Fifth Third's consent or by order of the Court.

17.     Books and Records.  The Debtor shall permit Fifth Third and any authorized representatives designated by Fifth Third (including, without limitation, its auditors, appraisers and financial advisors) to visit and inspect any of the properties of the Debtor, including the Debtor's financial and accounting records, and to make copies and take extracts therefrom, and to discuss the Debtor's affairs, finances and business with such Debtor's officers and independent public accountants, at such reasonable times during

19

normal business hours and as often as may be reasonably requested. Without limiting the generality of the foregoing, the Debtor shall promptly provide to Fifth Third and Fifth Third's designated representatives any information or data reasonably requested to monitor the Debtor's compliance with the covenants in the Prepetition Loan Agreements and the provisions of the DIP Loan Documents and this Order and to perform appraisals or other valuation analyses of any property of the Debtor.

18.     <u>Authorized Signatories</u>. The signature of Robert Majesky or the Debtor's attorneys shall bind the Debtor, and no other approval shall be necessary.

19.     <u>Fifth Third's Reservation of Rights; No Waiver</u>. Fifth Third does not waive, and expressly reserves, any and all claims, defenses, rights and remedies it has pursuant to any or all of the Prepetition Loan Documents, the DIP Loan Documents, the Bankruptcy Code and/or other applicable law against the Debtor and any officer, director, employee, agent or other representative of the Debtor. In addition, the rights and obligations of the Debtor and the rights, claims, liens, security interests and priorities of Fifth Third arising under this Order are in addition to, and are not intended as a waiver or substitution for, the rights, obligations, claims, liens, security interests and priorities granted by the Debtor, in its prepetition capacity, under the Prepetition Loan Documents. Without limiting the generality of the foregoing, Fifth Third may petition this Court for any such additional protection it may reasonably require with respect to the Prepetition Indebtedness, the DIP Indebtedness or otherwise, and nothing in this Order constitutes a finding with respect to the adequacy of the protection of Fifth Third's interests in the Prepetition Collateral.

20

20.    Order Binding on Successors.  The provisions of this Order shall be binding upon and

inure to the benefit of Fifth Third, the Debtor, and its successors and assigns (including

any trustee or other estate representative appointed as a representative of the Debtor's

estate or of any estate in any Successor Case); provided, however, that the terms of this

Order shall not be binding on a chapter 7 trustee except with respect to loans made and

expenses incurred prior to the appointment of such chapter 7 trustee.  Except as otherwise

explicitly set forth in this Order, no third parties are intended to be or shall be deemed to

be third party beneficiaries of this Order or the DIP Loan Documents.

21.    Effect of Dismissal, Conversion or Substantive Consolidation.  If the Case is dismissed,

converted, otherwise superseded or substantively consolidated, Fifth Third's rights and

remedies under this Order and the DIP Loan Documents shall be and remain in full force

and effect as if the Case had not been dismissed, converted, superseded or substantively

consolidated.  Furthermore, notwithstanding any such dismissal, conversion, supercission

or substantive consolidation, all of the terms and conditions of this Order, including,

without limitation, the liens and the priorities granted hereunder, shall remain in full force

and effect; provided, however, that a subsequently appointed chapter 7 trustee shall not

be bound by this Order with respect to loans made after the appointment of such

chapter 7 trustee.

22.    Releases and Validation of Prepetition Indebtedness and Liens; Allowance of Secured

Claim.  The release, discharge, waivers and agreements set forth in this ordering

paragraph will be deemed effective upon the entry of a Final Order incorporating this

paragraph, subject only to the right of the Committee and any other party in interest to

object on the terms and conditions set forth in ordering paragraph 24 below.  The Debtor

21

and its estate, hereby: (a) release and discharge Fifth Third, together with its affiliates, agents, attorneys, officers, directors and employees from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the Prepetition Loan Documents, any aspect of the Prepetition relationship between Fifth Third and the Debtor, or any other acts or omissions by Fifth Third in connection with any of the Prepetition Loan Documents or its Prepetition relationship with the Debtor; (b) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and nonavoidability (under §§ 510, 544, 545, 547, 548, 550, 551, 552 or 553 of the Bankruptcy Code or otherwise) of the Prepetition Indebtedness and the security interests in and liens on the Prepetition Collateral in favor of Fifth Third (which liens and security interests are first priority subject only to the Prior Claims); and (c) agree, without further Court order and without the need for the filing of any proof of claim, to the allowance of the prepetition claims of Fifth Third pursuant to §§ 502 and 506 of the Bankruptcy Code on account of the Prepetition Indebtedness as secured claims according to Fifth Third's books and records, the principal amount of which is not less than approximately $4,241,657.50 as of the Filing Date, plus accrued prepetition and postpetition interest, fees, expenses and other amounts chargeable under the Prepetition Loan Documents.

23. <u>Fifth Third's Relationship with the Debtor</u>. Solely by virtue of making decisions to advance a loan or loans to fund the DIP Trade-In Indebtedness to the Debtor, in administering the DIP Trade-In Indebtedness, or taking any other actions reasonably related to this Order or the DIP Trade-In Indebtedness or the DIP Trade-In Loan Documents, Fifth Third shall have no liability to any third party and shall not be deemed

to be in control of the operations of the Debtor or to be acting as a "controlling person,"
"responsible person" or "owner or operator" with respect to the operation or management
of the Debtor (as such term, or any similar terms, are used in the Internal Revenue Code
or any similar Federal or state statute), and Fifth Third's relationship with the Debtor
shall not constitute or be deemed to constitute a joint venture or partnership of any kind
between Fifth Third and the Debtor.

24.    Objections by Parties in Interest. Except as set forth in stipulating paragraphs B and C, in
ordering paragraph 22 and in this ordering paragraph, all of the provisions of this Order
shall be final and binding on the Debtor and all creditors and other parties in interest.
Any party in interest other than the Debtor shall have until August 13, 2008 within which
to file, on behalf of the Debtor, and to serve upon counsel for Fifth Third, objections or
complaints respecting (a) the claims, causes of actions and defenses released by the
Debtor pursuant to ordering paragraph 22 above or (b) the validity, extent, priority,
avoidability, or enforceability of the Prepetition Indebtedness or Fifth Third's prepetition
liens on and prepetition security interests in the Prepetition Collateral. In the event that
no objections or complaints are filed with this Court and served upon counsel of record
for Fifth Third within the time period set forth above or no order of this Court granting
such objections or the relief requested in such complaints is entered on or prior to, the
provisions of ordering paragraph 22 of this Order shall become final and binding on all
such parties.

25.    Guaranties. As evidenced by its signatures below, the guarantor of the Prepetition
Indebtedness has acknowledged and agreed that (a) his guaranties of the Prepetition
Indebtedness (i) are unimpaired by this Order and shall remain in full force and effect,

23

and (ii) shall be deemed to apply to the DIP Indebtedness to the same extent as the Prepetition Indebtedness, and (b) they will execute new guaranties on the DIP Indebtedness in forms and in substance reasonably acceptable to Fifth Third.

26.    <u>Effect of Modification of Order</u>.  The Debtor shall not, without Fifth Third's prior written consent, seek to modify, vacate or amend this Order or any DIP Loan Documents.  If any of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacatur shall not affect the validity of any Indebtedness outstanding immediately prior to the effective time of such stay, modification or vacation, or the validity and enforceability of any lien, priority, right, privilege or benefit authorized hereby with respect to any such Indebtedness. Notwithstanding any such stay, modification or vacatur, any Indebtedness outstanding immediately prior to the effective time of such modification, stay or vacatur shall be governed in all respects by the original provisions of this Order, and Fifth Third shall be entitled to all the rights, privileges and benefits, including, without limitation, the security interests and priorities granted herein, with respect to all such Indebtedness.

27.    <u>Safe Harbor</u>.  The Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the Debtor to obtain credit on the terms and conditions upon which the Debtor and Fifth Third have agreed.  Thus, each of such terms and conditions constitutes a part of the authorization under § 364 of the Bankruptcy Code, and is, therefore, subject to the protections contained in § 364(e) of the Bankruptcy Code.

28.    <u>Objections Overruled or Withdrawn</u>.  All objections to the entry of this Order have been withdrawn or overruled.

24

35753.1

Case 08-11580   Doc 67   Filed 06/19/08   Entered 06/20/08 14:02:38   Desc Main
Document       Page 25 of 28

29.   Controlling Effect of Order. To the extent any provisions in this Order conflict with any provisions of the Motion, any Prepetition Loan Documents or any DIP Loan Documents, the provisions of this Order shall control.

30.   Order Effective. This Order shall be effective as of the date of its entry by the Court and ratifies all advances made by Fifth Third pursuant to the Interim Order including the advance of funds in the sum of $23,046 to Auffenberg Volkswagen for the purchase of a Volkswagen GTI automobile (the "GTI"), which the Debtor has sold to one of its customers on May 23, 2008.

Dated:

JUN 1 9 2008

ENTERED:   _Carl A. Doyle_

_____
Carol A. Doyle
Chief United States Bankruptcy Judge

35753.1

AGREED TO:

**Majesky Automotive Group, Inc.**          **Fifth Third Bank Chicago**

By:_____          By:_____
       One of Its Attorneys                          One of Its Attorneys

Abraham Brustein (ARDC# 0327662)          Gregory J. Jordan  (ARDC #6205510)
Derek D. Samz (ARDC# 6290656)             Peter J. Schmidt  (ARDC #6256638)
Julia Jensen Smolka (ARDC# 6272466)       Jean Soh (ARDC #6285187)
Di Monte & Lizak, LLC                     Polsinelli Shalton Flanigan Suelthaus PC
216 West Higgins Road                     180 N. Stetson, Ste 4525
Park Ridge, Illinois 60068                Chicago, IL 60601
(847) 698-9600 (Telephone)                (312) 819-1900(Telephone)
(847) 698-9623 (Facsimile)                (312) 819-1910 (Facsimile)
Email: abrustein@dimontelaw.com           gjordan@polsinelli.com
Email: dsamz@dimontelaw.com               pschmidt@polsinelli.com
Email: jjensen@dimontelaw.com             jsoh@polsinelli.com

Acknowledged and agreed:


_____
Robert M. Majesky, guarantor

35753.1

## EXHIBIT "A"

### Use of Proceeds

A-1

35753.1

| Model | Last 4 Vin | Cost |
|---|---|---|
| **Volkswagen** | | |
| Rabbitt | 5546 $ | 20,854 |
| GTI | 9650 $ | 24,933 |
| Beetle (Conv) | 8408 $ | 25,692 |
| Tiguan | 0788 $ | 26,205 |
| Tiguan | 1608 $ | 33,373 |
| Tiguan | 1748 $ | 27,353 |
| Tiguan | 1128 $ | 29,341 |
| ***VW Totals*** | $ | 187,751 |
| ***Kia Totals Financed @ 95% of Cost*** | | $   178,363.45 |
| **Kia** | | |
| Spectra EX | 8730 $ | 16,266 |
| Optima LX | 4448 $ | 18,881 |
| Spectra EX | 0895 $ | 16,266 |
| ***Kia Totals*** | $ | 51,413 |
| ***Kia Totals Financed @ 95% of Cost*** | | $    48,842.00 |
| ***Dealer Trade*** | | |
| *Auffenberg Volkswagen* | 2543 $ | 23,046 |
| ***Dealer Trade Total Financed*** | | $    23,046.00 |
| ***Estimated UST Quarterly*** | $ | 13,000 |
| ***Estimated UST Quarterly Fee Total Financed*** | | $ 13,000.00 |
| **Total to Be Financed** | | $263,251.80 |

A-2