**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11 Proceeding** |
| | ) | |
| **MAJESKY AUTOMOTIVE GROUP, INC.** | ) | **Case No.: 08-11580** |
| | ) | |
| Debtor. | ) | **Hon. Carol A. Doyle** |
| | ) | |

**AMENDED FINAL ORDER (I) AUTHORIZING SECURED**
**POSTPETITION FINANCING ON A SUPERPRIORITY BASIS**
**PURSUANT TO 11 U.S.C. § 364 AND (II) SCHEDULING A**
**FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(c)**

Upon the motion (the "Motion") dated June 13, 2008 filed by Majesky Automotive

Group, Inc., as debtor and debtor-in-possession (hereinafter the "Debtor") pursuant to § 364(c) of

Title 11 of the United States Code (11 U.S.C. §§ 101, et seq. hereinafter the "Bankruptcy Code")

and Rules 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), seeking this Court's authorization for the Debtor, inter alia, (a) authorizing the Debtor to

obtain post-petition financing in the approximate amount of $215,000.00 on the aggregate

principal amount upon the terms and conditions set forth in this Order pursuant to §§ 364(c) and

364(d) of the Bankruptcy Code, Rules 4001(c) and 9014 of the Bankruptcy Rules, and Local

Rule 4001-2 from Fifth Third Bank Chicago ("Fifth Third"), subject to the terms and conditions

set forth in this Motion; granting Fifth Third priority in payment with respect to such obligations

over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b)

and 507(b), other than as described below; and granting Fifth Third other liens and adequate

protection; due and sufficient notice of the Motion under the circumstances having been given;

and a hearing in accordance with Bankruptcy Rules on the Motion having been held before this

Court; and upon the entire record made at such hearing, and this Court having found good and sufficient cause appearing therefor;

BASED UPON THE MOTION AND THE RECORD BEFORE THE COURT, THE COURT FINDS AS FOLLOWS:

A.     On May 7, 2008 (the "Petition Date"), the Debtor filed with this Court its Voluntary Petition For Relief under Chapter 11 of the Bankruptcy Code ("Case"). The Debtor remains in possession of its property, and they continue to operate and manage its business, as Debtor in possession pursuant to Bankruptcy Code §§ 1107 and 1108.

B.     No committee of creditors holding unsecured claims has been appointed in this Case, pursuant to § 1102 of the Bankruptcy Code or otherwise.

C.     The Debtor operates the business of an automobile dealership under the names Matteson Imports, Matteson Kia, Matteson Volkswagen and Matteson Isuzu. MAG operates its business from premises located at 5355 Miller Circle Drive, Matteson, Illinois 60443 (the "Business") as debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

D.     This Court has jurisdiction over the Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

E.     The Debtor's payment of the Third Party Liens on the Subject Vehicles is essential to maintain the Debtor's business relationships with its customers, vendors and contractors, to carry out the Business and otherwise continue its operations as a viable business. The Debtor's payment of the Third Party Liens on the Subject Vehicles is necessary to maintain the Debtor's intrinsic goodwill for the benefit of its creditors.

F.     The Debtor does not have the resources or liquidity to satisfy or pay the Third Party Liens, as defined in the Motion, on the Subject Vehicles, as defined in the Motion, without obtaining post-petition financing.

2

G.    In the absence of the advance of monies under this Order as postpetition financing, the continued operation of the Debtor's business would seriously and irreparably harm the Debtor and its estate.  The preservation, maintenance and enhancement of the value of the Debtor's assets are of the utmost significance and importance to a successful reorganization of the Debtor under chapter 11 of the Bankruptcy Code.

H.    Given the Debtor's current financial condition and capital structure, the Debtor is unable to obtain unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense.  Financing on a postpetition basis is not otherwise available without the Debtor granting, pursuant to Bankruptcy Code § 364(c)(1), claims having priority over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b) and 507(b), and securing such indebtedness and obligations with the liens and security interests described below pursuant to Bankruptcy Code §§ 364(c) and 364(d).

I.    Fifth Third has advised the Court that it is willing to extend credit under the terms of this Order and make secured and priority postpetition loans and other secured and priority postpetition extensions of credit to the Debtor, but only on the terms and subject to the conditions set forth in this Order.

J.    Notice of the Motion and the relief requested in the Motion has been given to (i) the Office of the United States Trustee, (ii) the creditors holding the 20 largest unsecured claims against the Debtor; and (iii) known holders of prepetition liens against the Debtor's property, which notice is sufficient and proper in the circumstances.

K.    Based on the record presented to this Court by the Debtor, it appears that the postpetition financing requested in the Motion has been negotiated in good faith and at arms length

3

between the Debtor and Fifth Third, and any credit extended and loans made to the Debtor pursuant to this Order shall be deemed to have been extended, issued or made, as the case may be, in good faith within the meaning of Bankruptcy Code § 364(e).

L. Based on the record before this Court, it appears (and the Debtor and Fifth Third have stipulated) that the terms of this Order, including, without limitation, the terms of the DIP Trade-In Loan Documents, as defined herein, are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

M. This Court concludes that entry of this Order is in the best interests of the Debtor's estate and creditors as its implementation will, among other things, allow for the continuation of the Debtor's automotive sales and service activities, which are necessary to sustain the operation of the Debtor's existing business and enhance the Debtor's prospects for a successful reorganization or a sale of its assets.

Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Preliminary Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED** that:

1. <u>Motion Granted</u>. The Motion is granted, subject to the terms and conditions set forth in this Order, *nun pro tunc* to May 13, 2008.

2. <u>Authorization</u>. The Debtor are expressly authorized and empowered to

   (a) borrow money from Fifth Third on a secured and superpriority administrative basis in an amount of approximately $215,000 as additional advances under the terms of the "<u>Used Vehicle Promissory Note</u>", as that term is used in this Court's order entered on the docket on May 30, 2008 (EOD #49) and is secured under the

4

terms of the "Floor Plan Agreement", as that term is used in this Court's order entered on the docket on May 30, 2008 (EOD #49), and subject to the terms of the "Financial Covenants", as that term is used in this Court's order entered on the docket on May 30, 2008 (EOD #49). The Used Vehicle Promissory Note, the Floor Plan Agreement and the Financial Covenants as to advances made under this Order shall collectively be referred to as the "DIP Trade-In Loan Documents" and such advances shall be and become obligations of the Debtor upon the advance of monies by Fifth Third under this Order;

(b)    perform its obligations pursuant to the provisions of this Order and otherwise consummate the terms and provisions of the Motion and this Order and to evidence perfection of the liens and security interests to be given to Fifth Third pursuant hereto and thereto, including, without limitation, such amendments or modifications of the Prepetition Loan Documents, as that term is used in this Court's order entered on the docket on May 30, 2008 (EOD #49), as may be necessary to evidence the postpetition borrowings authorized herein.    All postpetition loans made under the terms of this Order by Fifth Third to the Debtor pursuant to this Order and under the DIP Trade-In Loan Documents (including the Debtor's DIP Liabilities) are referred to herein as the "DIP Trade-In Indebtedness."

3.    Borrowing.  Subject to the terms and conditions of this Order and the DIP Trade-In Loan Documents, Fifth Third will make postpetition loans to the Debtor as may be necessary to satisfy the Third Party Liens on the Subject Vehicles in an aggregate amount not to exceed $215,000.  Notwithstanding the foregoing, if the amounts required by the parties

5

holding the Third Party Liens on the Subject Vehicles exceed $215,000, Fifth Third in its sole discretion may advance additional funds in excess of $215,000 (or any other limitations in the DIP Trade-In Loan Documents), such advances (and any other indebtedness in excess of such amount) shall constitute additional allowed advances for the DIP Trade-In Indebtedness entitled to the benefits of the DIP Trade-In Loan Documents and this Order.

4.    Existing Events of Default.    Nothing herein or in any of the DIP Trade-In Loan Documents shall constitute or be deemed to constitute a waiver by Fifth Third of any existing or future Events of Default (including, without limitation, the Events of Default arising from the commencement of this Case).    Without prejudice to, or waiver of, Fifth Third's rights and remedies against the Debtor in respect of any Events of Default other than the Existing Defaults (as defined below), Fifth Third agrees to forbear from foreclosing its liens on any DIP Collateral (as defined below) or otherwise taking enforcement action against the Debtor based solely on any Event of Default which occurred prior to the entry of this Order and of which Fifth Third had actual knowledge as of such date (collectively, the "Existing Defaults"); provided that such forbearance shall terminate upon the earlier of (i) the occurrence of any Event of Default other than an Existing Default or (ii) the Loan Payment Date (as defined below).

5.    Interest, Fees, Costs and Expenses.    The DIP Trade-In Indebtedness shall bear interest at the Prime Rate plus 450 basis points (4.5%) per annum.    Interest shall be payable monthly in arrears on the 15th day of each month. All fees payable under the Prepetition Loan Agreements shall be applicable to the DIP Trade-In Loan Documents. The Debtor will, subject to the provisions set forth below, on the fifteenth day following its receipt of

6

an invoice from Fifth Third pay Fifth Third's reasonable out-of-pocket expenses, including reasonable attorneys' fees, costs and expenses incurred in connection with this financing. Fifth Third shall provide counsel for the Debtor and the United States Trustee with a detailed invoice of all fees, costs and expenses for which reimbursement is sought. Each party served shall have ten (10) business days within which to file an objection with the Court and bring the matter on for a hearing on notice to the Debtor, the United States Trustee, Fifth Third and all other parties requesting notice of all matters.

6.    <u>Maturity of Postpetition Credit</u>.    The Debtor's obligations to repay the DIP Trade-In Indebtedness shall immediately and automatically mature (except as Fifth Third may otherwise agree in writing in its sole discretion), the DIP Trade-In Indebtedness shall be immediately due and payable in cash (except as Fifth Third may otherwise agree in writing in its sole discretion), and Fifth Third shall have the enforcement rights set forth in paragraph 10 hereof (except as Fifth Third may otherwise agree in writing in its sole discretion) upon the earliest to occur of the following (the "<u>Loan Payment Date</u>"):

(a)    September 30, 2008;

(b)    the Fifteen day of the month following the month in which the Debtor has completed the sale of all of the Subject Vehicles

(c)    the date of final indefeasible payment and satisfaction in full in cash of DIP Trade-In Indebtedness;

(d)    the effective date of any confirmed plan of reorganization in the Case;

(e)    the consummation of the sale or other disposition of all or substantially all of the assets of the Debtor;

7

08-11580:75.3:Amended Motion:Proposed Order Entered: 7/1/2008 3:42:13 PM by:Abraham Brustein Page 8 of 23

(f)     the occurrence of any violation by the Debtor of this Order (including, but not limited to, a violation of the covenants set forth in ordering  paragraph 13 of this Order) or the Final Order, or any Event of Default (as defined in the DIP Trade-In Loan Documents;

(g)     the dismissal of the Case or the conversion of the Case into a case under Chapter 7 of the Bankruptcy Code;

(h)     the appointment of a trustee or an examiner with enlarged powers (beyond those set forth in §§ 1106(a)(3) and (4) of the Bankruptcy Code) relating to the operation of the business of the Debtor unless such trustee or examiner is appointed with the prior written consent of Fifth Third (which consent may be withheld in its sole discretion), or the Debtor applies for, consent to, or acquiesce in, any such appointment without the prior written consent of Fifth Third (which consent may be withheld in its sole discretion);

(i)     this Order is stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of Fifth Third (which consent may be withheld in its sole discretion);

(j)     this or any other Court enters an order or judgment in the Case modifying, limiting, subordinating or avoiding the priority of any Indebtedness, as that term is used in this Court's order entered on the docket on May 30, 2008 (EOD #49), or the perfection, priority or validity of Fifth Third's prepetition or postpetition liens on any DIP Collateral, as that term is used in this Court's order entered on the docket on May 30, 2008 (EOD #49);

8

(k)     the Debtor files any application for approval or allowance of, or any order is entered approving or allowing, any administrative expense claim in the Case, having any priority over, or being pari passu with, the super administrative priority of the DIP Trade-In Indebtedness;

(l)     an order is entered in the Case granting relief from the automatic stay of § 362 of the Bankruptcy Code to any holder or holders of a lien on any material collateral in allowing such holder or holders to foreclose or otherwise realize upon such liens; or

(m)     any motion or application is filed by or on behalf of the Debtor in the Case seeking the entry of an order, or an order is entered in the Case, approving any subsequent debtor in possession facility for borrowed money or other extensions of credit unless such subsequent facility and such order expressly provide for the indefeasible payment and complete satisfaction in full in cash to Fifth Third of all Indebtedness prior to, or concurrently with, any initial borrowings or other extensions of credit under such subsequent facility.

7.     Security for DIP Trade-In Indebtedness. Fifth Third is hereby granted as security for the repayment of all amounts of the DIP Trade-In Indebtedness, pursuant to §§ 364(c)(2) and 364(c)(3) of the Bankruptcy Code, a valid and perfected first lien on the Prepetition Collateral, as that term is used in this Court's order entered on the docket on May 30, 2008 (EOD #49), and all other property of the Debtor, except for any claims or causes of action (including, without limitation, any causes of action arising under chapter 5 of the Bankruptcy Code) belonging to the Debtor or its estate (collectively with all proceeds and products of any or all of the foregoing, the "DIP Collateral"), and no claim of Fifth Third,

9

shall be subject to subordination to any other liens, security interests or claims under § 510 of the Bankruptcy Code or otherwise.

8.   Perfection of New Liens.  All liens and security interests on or in the DIP Collateral granted to Fifth Third by this Order and the DIP Trade-In Loan Documents shall be, and they hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect such perfection; provided, however, that notwithstanding the provisions of § 362 of the Bankruptcy Code, Fifth Third may, at its sole option, file or record or cause the Debtor to obtain any third party consents or execute, file or record, at the Debtor's expense, any such notices of liens and security interests, and other similar documents as Fifth Third may require.  If Fifth Third, in its sole discretion, shall elect for any reason to cause to be obtained any third party consents or cause to be filed or recorded any such notices, financing statements, or other documents with respect to such security interests and liens, or if Fifth Third, in accordance with the DIP Trade-In Loan Documents, shall elect to take possession of any DIP Collateral, all such third party consents, financing statements or similar documents or taking possession shall be deemed to have been filed or recorded or taken in this Case as of the commencement of this Case but with the priorities as set forth herein.  Fifth Third may (in its discretion) but shall not be required to, file a certified copy of this Order in any filing or recording office in any county or other jurisdiction in which the Debtor has real or personal property and such filing or recording shall be accepted and shall constitute further evidence of perfection of Fifth Third's interests in the DIP Collateral.

10

9.    <u>Waiver</u>.  The Debtor and its estate (and any party in interest acting on behalf of the

Debtor) hereby irrevocably waive, and are barred from asserting or exercising any right,

(a) without Fifth Third's prior written consent (which may be withheld in its sole

discretion), or (b) without prior indefeasible payment and satisfaction in full in cash of

the DIP Trade-In Indebtedness: (i) to grant or impose, or request that the Court grant or

impose, under § 364 of the Bankruptcy Code or otherwise, liens on or security interests in

any DIP Collateral, which are <u>pari passu</u> with or superior to Fifth Third's liens on and

security interests in such DIP Collateral; or (ii) to modify or affect any of the rights of

Fifth Third under this Order or any DIP Trade-In Loan Documents by any order entered

in the Case or any Successor Case.

10.    <u>Modification of Automatic Stay; Other Remedies</u>.

(a)    Except as set forth in subparagraph (b) of this paragraph, which governs any

action by Fifth Third to realize upon or foreclose on its liens on any DIP

Collateral or to exercise any other default-related remedies (other than those

specifically referenced in the next sentence), the automatic stay pursuant to § 362

of the Bankruptcy Code is hereby vacated as to Fifth Third to permit it to perform

in accordance with, and exercise, enjoy and enforce its rights, benefits, privileges

and remedies pursuant to this Order and the other DIP Trade-In Loan Documents

without further application or motion to, or order from, the Court, and regardless

of any change in circumstances (whether or not foreseeable), neither § 105 of the

Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable

law shall be utilized to prohibit Fifth Third's exercise, enjoyment and

enforcement of any of such rights, benefits, privileges and remedies.  Fifth Third

11

is hereby granted leave, among other things, to (a) receive and apply payments of the DIP Trade-In Indebtedness and collections on and proceeds of the Prepetition Collateral and the DIP Collateral to the DIP Trade-In Indebtedness in the manner specified in this Order and the DIP Trade-In Loan Documents, (b) file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral, (c) to the extent permitted by § 506(b) of the Bankruptcy Code, charge and collect any interest, fees, costs, and expenses and other amounts accruing at any time under the DIP Trade-In Loan Documents or this Order as provided therein, (d) to give the Debtor any notice provided for in any of the DIP Trade-In Loan Documents or this Order, and (e) upon the occurrence of an Event of Default other than any Existing Default, or upon the Loan Payment Date, and without application or motion to, or order from the Court or any other court, (i) terminate the Prepetition Loan Agreements and the postpetition financing allowed under this Order and the other DIP Trade-In Loan Documents, (ii) declare all Indebtedness immediately due and payable, and require that all contingent Indebtedness (if any) be cash collateralized or terminated without liability to Fifth Third, (iii) revoke the Debtor's right, if any, under this Order and/or the other DIP Trade-In Loan Documents to use cash collateral and (iv) cease making loans or other extensions of credit and/or suspend or terminate any obligation of Fifth Third to make loans or other extensions of credit under the DIP Trade-In Loan Documents or this Order.

12

(b)    Upon the occurrence of any Event of Default other than any Existing Defaults, or upon the Loan Payment Date, Fifth Third shall be entitled (i) to file an emergency motion for relief from the automatic stay for the purpose of realizing upon, foreclosing or otherwise enforcing its liens on any or all of the DIP Collateral and/or to exercise any other default-related remedies under the DIP Trade-In Loan Documents, this Order or applicable law, and (ii) to obtain an expedited hearing on such motion upon three (3) days' notice to counsel for the Debtor and counsel for the United States Trustee.  Fifth Third shall be entitled to such relief from the automatic stay upon a showing only that one or more Events of Default (other than any Existing Default) have occurred and are then continuing or that the Loan Payment Date has occurred.  Upon the entry of an order granting Fifth Third relief from the automatic stay to enforce its liens or to exercise any other default-related remedies, (i) Fifth Third may exercise any remedies available to Fifth Third under this Order, the Prepetition Loan Agreements and other Prepetition Loan Documents or applicable law, including to replevy without bond or attach without bond the Prepetition Collateral and the DIP Collateral, (ii) provided that Fifth Third in its sole discretion has made available to the Debtor (through additional Postpetition Loans or by consenting to Debtor's use of cash collateral) sufficient funds to pay the costs thereof, the Debtor shall cooperate with Fifth Third in connection with any enforcement action by Fifth Third by, among other things, (A) providing access to its premises to representatives of Fifth Third, (B) providing Fifth Third access to its books and records, (C) performing all other obligations set forth in the Prepetition Loan Agreements, the Prepetition Loan

13

Documents, this Order and/or the other DIP Trade-In Loan Documents, and (D) taking reasonable steps to safeguard and protect the Prepetition Collateral and the DIP Collateral until Fifth Third can make adequate provision to protect and safeguard the Prepetition Collateral and the DIP Collateral, and the Debtor shall not otherwise interfere or encourage others to interfere with Fifth Third's enforcement of its rights.  In addition, upon the occurrence of any Event of Default other than any Existing Default, or upon the Loan Payment Date, and provided that Fifth Third in its sole discretion has made available to the Debtor (through additional postpetition loans or by consenting to the Debtor's use of cash collateral) sufficient funds to pay the costs thereof, the Debtor shall, at the request of Fifth Third, use commercially reasonable efforts to sell or otherwise dispose of the DIP Collateral on terms and conditions acceptable to Fifth Third and shall turn over the proceeds of such sale(s) or other disposition(s) to Fifth Third for application to the DIP Trade-In Indebtedness in accordance with the provisions hereof and the DIP Trade-In Loan Documents.

11.    <u>Priority Claims</u>.  The DIP Trade-In Indebtedness shall have the highest administrative priority under §364(c)(1) of the Bankruptcy Code, and shall have priority over all other costs and expenses of administration of any kind, including those specified in, or ordered pursuant to, §§ 105, 326, 330, 331, 503(b), 507(a), 507(b) or 726 or any other provision of the Bankruptcy Code or otherwise (whether incurred in the Case or any Successor Case), and shall at all times be senior to the rights of the Debtor, any successor trustee or estate representative in the Case or any Successor Case.  Nothing in this Order shall constitute the consent by Fifth Third to the imposition of any costs or expense of

14

administration or other charge, lien, assessment or claim (including, without limitation, the Commitment) against Fifth Third, its claims or its collateral under § 506(c) of the Bankruptcy Code or otherwise.

12.    <u>Use of Loan Proceeds</u>. Except as otherwise provided in ordering paragraphs 14 and 15 hereof, the proceeds of any loans or other extensions of credit made by Fifth Third to the Debtor pursuant to this Order and the DIP Trade-In Loan Documents shall be used only to pay such amounts as are necessary to satisfy Third Party Liens on the Subject Vehicles.

13.    <u>Covenants</u>. The Debtor shall timely comply with all of the covenants set forth in this Order and the DIP Trade-In Loan Documents.

14.    <u>Application of Collateral Proceeds</u>. Subject to the provisions of paragraph 6, the Debtor shall repay the DIP Trade-In Indebtedness in accordance with the following schedule:

(a)    The Debtor will pay accrued interest each month on the fifteenth day of the month on the principal amount owing for the DIP Trade-In Indebtedness as of the end of the prior month; and

(b)    Upon the sale of each of the Subject Vehicles, the Debtor shall deliver to Fifth Third the portion of the principal advance received with regard to that vehicle. The Debtor will receive and hold all proceeds of any sale or other disposition of any such vehicle in trust for the benefit of Fifth Third pursuant to 810 ILCS 5/9-315.01. MAG will fully, faithfully and promptly account for funds remitted by MAG to Fifth Third in partial satisfaction of the DIP Trade-In Indebtedness, on the earlier of (i) on or before ten (10) business days after each Subject Vehicles is

15

sold and delivered to a customer's possession, or (ii) on or before two (2) business days after receipt of sale proceeds from the customer purchasing such vehicle.

15.  **Non-Ordinary Course Dispositions.**  No sale, lease or other disposition of Prepetition Collateral or DIP Collateral outside the ordinary course of business (including any auction or other similar sales) may be done without Fifth Third's consent or by order of the Court.

16.  **Books and Records.**  The Debtor shall permit Fifth Third and any authorized representatives designated by Fifth Third (including, without limitation, its auditors, appraisers and financial advisors) to visit and inspect any of the properties of the Debtor, including the Debtor's financial and accounting records, and to make copies and take extracts therefrom, and to discuss the Debtor's affairs, finances and business with such Debtor's officers and independent public accountants, at such reasonable times during normal business hours and as often as may be reasonably requested.  Without limiting the generality of the foregoing, the Debtor shall promptly provide to Fifth Third and Fifth Third's designated representatives any information or data reasonably requested to monitor the Debtor's compliance with the covenants in the Prepetition Loan Agreements and the provisions of the DIP Trade-In Loan Documents and this Order and to perform appraisals or other valuation analyses of any property of the Debtor.

17.  **Authorized Signatories.**  The signature of Robert Majesky or the Debtor's attorneys shall bind the Debtor, and no other approval shall be necessary.

18.  **Fifth Third's Reservation of Rights; No Waiver.**  Fifth Third does not waive, and expressly reserves, any and all claims, defenses, rights and remedies it has pursuant to any or all of the Prepetition Loan Documents, the DIP Trade-In Loan Documents, the

16

Bankruptcy Code and/or other applicable law against the Debtor and any officer, director, employee, agent or other representative of the Debtor. In addition, the rights and obligations of the Debtor and the rights, claims, liens, security interests and priorities of Fifth Third arising under this Order are in addition to, and are not intended as a waiver or substitution for, the rights, obligations, claims, liens, security interests and priorities granted by the Debtor, in its prepetition capacity, under the Prepetition Loan Documents. Without limiting the generality of the foregoing, Fifth Third may petition this Court for any such additional protection it may reasonably require with respect to the Prepetition Indebtedness, the DIP Trade-In Indebtedness or otherwise, and nothing in this Order constitutes a finding with respect to the adequacy of the protection of Fifth Third's interests in the Prepetition Collateral.

19.    Order Binding on Successors. The provisions of this Order shall be binding upon and inure to the benefit of Fifth Third, the Debtor, and its successors and assigns (including any trustee or other estate representative appointed as a representative of the Debtor's estate or of any estate in any Successor Case); provided, however, that the terms of this Order shall not be binding on a chapter 7 trustee except with respect to loans made and expenses incurred prior to the appointment of such chapter 7 trustee. Except as otherwise explicitly set forth in this Order, no third parties are intended to be or shall be deemed to be third party beneficiaries of this Order or the DIP Trade-In Loan Documents.

20.    Effect of Dismissal, Conversion or Substantive Consolidation. If the Case is dismissed, converted, otherwise superseded or substantively consolidated, Fifth Third's rights and remedies under this Order and the DIP Trade-In Loan Documents shall be and remain in full force and effect as if the Case had not been dismissed, converted, superseded or

17

27.    <u>Order Effective</u>.  This Order shall be effective as of ~~May 13,~~ *June 15,* 2005, *nun pro tunc*.

Dated: June ___, 2008

ENTERED:

_____
Hon. Carol A. Doyle
Chief United States Bankruptcy Judge

AGREED TO:

**Majesky Automotive Group, Inc.**

By:_____
    One of Its Attorneys

Abraham Brustein (ARDC# 0327662)
Derek D. Samz (ARDC# 6290656)
Julia Jensen Smolka (ARDC# 6272466)
Di Monte & Lizak, LLC
216 West Higgins Road
Park Ridge, Illinois 60068
(847) 698-9600 (Telephone)
(847) 698-9623 (Facsimile)
Email: abrustein@dimontelaw.com
Email: dsamz@dimontelaw.com
Email: jjensen@dimontelaw.com

**Fifth Third Bank Chicago**

By:_____
    One of Its Attorneys

Gregory J. Jordan  (ARDC #6205510)
Peter J. Schmidt  (ARDC #6256638)
Jean Soh (ARDC #6285187)
Polsinelli Shalton Flanigan Suelthaus PC
180 N. Stetson, Ste 4525
Chicago, IL 60601
(312) 819-1900(Telephone)
(312) 819-1910 (Facsimile)
gjordan@polsinelli.com
pschmidt@polsinelli.com
jsoh@polsinelli.com

20

35429.1

Acknowledged and agreed:

_____

Robert M. Majesky, guarantor

35429.1

# EXHIBIT "A"

## Use of Proceeds

| Bank Name and Address | PayOff Amount | STOCK # | VIN # |
|---|---|---|---|
| **Fifth Third Bank** <br> 5050 Kingsley Drive <br> Cincinnati, OH 45263-9998 | $13,921.09 | **K5533A** | **KNAFE121665258944** |
| **CarMax Auto Finance** <br> PO Box 440609 <br> Kennesaw, GA 30160 | $4,882.13 | **V5081A** | **1FMZU67E92UB85074** |
| **USAA Federal Credit Union** <br> 10750 McDermott Fwy. <br> San Antonio, TX 78288 | $4,659.20 | **KP11103A** | **1GMDX03E91D185028** |
| **Triad Financial Corporation** <br> Dept. CH14222 <br> 5505 N. Cumberland Avenue <br> Chicago, IL 60656-4758 | $14,746.31 | **K5525A** | **KNADE123576207777** |
| **Volkswagen Credit** <br> 1401 Franklin Blvd. <br> Libertyville, IL 60048 | $4,191.60 | **V5132A** | **WVWPD63B03P446678** |
| **Ford Motor Credit** <br> PO Box 790119 <br> St. Louis, MO 63179-0119 | $509.79 <br> $1,010.21 | **K5540A** | **1FMYU93163KA73474** |
| **HSBC Auto Finance** <br> PO Box 60179 <br> City of Industry, CA 91716-0179 | $21,621.63 | **V5130A** | **3VWSF71K07M017207** |
| **Toyota Financial Services** <br> PO Box 5855 <br> Carol Stream, IL 60197-5855 | $15,813.90 | **V5214A** | **5TELU42N26Z278635** |
| **Bank of America** <br> 225 E. John Carpenter Freeway <br> Irving, TX 75062 | $16,578.04 | **K5271A** | **1D4HB48N74F128343** |
| **Drive Financial** <br> PO Box 660633 <br> Dallas, TX 75266-0633 | $9,492.75 | **K5518A** | **5W130650** |
| **Wachovia Dealer Services** | $11,013.64 | **K5515A** | **2G1WF52EX49120861** |

A-1

08-11580:75.3:Amended Motion:Proposed Order Entered: 7/1/2008 3:42:13 PM by:Abraham Brustein Page 23 of 23

PO Box 25341
Santa Anna, CA 92799-5341

| | | | |
|---|---|---|---|
| **Banco Popular**<br>3948 W. 55th Street<br>Chicago, IL 60632 | $8,889.80 | **I41674A** | **KL1TD52635B435680** |
| **Volkswagen Credit**<br>1401 Franklin Blvd.<br>Libertyville, IL 60048 | $13,860.56 | **V5212A** | **3VWDF71K55M638223** |
| **Harris Bank**<br>3800 Golf Rd - ste 300<br>Rolling Meadows, IL 60008 | $16,051.53 | **K5544A** | **KNDJF723267156141** |

## Checks Returned After 5/2/2008

| | | | |
|---|---|---|---|
| **Citi Financial**<br>P.O. Box 183036<br>Columbus, OH 43218 | $32,045.62<br>plus late fees | **V5007A** | **7U102058** |
| **Volkswagen Credit**<br>1401 Franklin Blvd.<br>Libertyville, IL 60048 | $20,304.98 | **V5163A** | **8W008025** |

**$209,592.78**

A-2

35429.1